

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 5, 2019

**BY ECF**

Honorable Colleen McMahon
Chief, United States District Judge
Southern District of New York
500 Pearl Street – Room 2550
New York, New York 10007

    Re:  <u>United States v. Jacinto Garcia</u>, 18-cr-802-CM

Dear Judge McMahon:

    The defendant in the above-captioned case is scheduled to be sentenced by Your Honor on September 12, 2019 at 2:00 p.m.  The Government writes in advance of sentencing and in response to the defendant's submission, dated August 29, 2019.  Pursuant to a plea agreement between the parties, the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") stipulated range is 168 to 210 months' imprisonment (the "Stipulated Guidelines Range").  For the reasons set forth below, the Government respectfully submits that a sentence within the Stipulated Guidelines Range of 168 to 210 months' imprisonment is appropriate.

    **A.  Offense Conduct**

    On October 31, 2018, the defendant was charged in a single count indictment.  Count One charged the defendant with participating in a conspiracy to distribute and possess with intent to distribute one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846.

    The charges arose from the defendant's membership in a drug trafficking organization ("DTO") engaged in the sale of street level amounts of heroin out of a building located in upper Manhattan. (Presentence Investigation Report ¶ 9) ("PSR").  Much of the heroin the DTO sold was laced with fentanyl.  (<u>Id.</u>)  In order to assure its customers that the heroin they purchased from drug building belonged to the DTO, the DTO placed stamps on the glassines of heroin as a way to identify it as a DTO product. (PSR ¶ 10). Because of the potency of the heroin it sold and its mixture with fentanyl, glassines marked with the DTO's stamps were recovered at the scene of multiple fatal and nonfatal overdoses of individuals who were believed to be customers of the DTO.  (PSR ¶ 11).  Rather than attempting to alter its formula for packaging the heroin it sold, the DTO embraced its reputation for selling a product so potent that it had the potential to kill its customers.  (PSR ¶ 13).

As with any organization, each member played a different role in the DTO's organizational hierarchy. And while the defendant was not a leader of the DTO, he was entrusted with certain important responsibilities including managing other DTO members and as well as the DTO's drug supply and cash proceeds. (PSR ¶ 14).

The defendant was employed by the DTO for the duration of the conspiracy and was aware of the volume of the DTO's sales through his role as manager of the "pitchers" – i.e., the individuals who participated in the hand to hand sales of heroin to DTO customers. At times, and when needed, the defendant would fill in for the pitchers as necessary. For example, on September 13, 2017, the defendant sold an undercover law enforcement agent three glassines of heroin outside of the drug building. (PSR ¶ 18). These glassines bore the stamp "Ras Baraka" which was a well-known brand of heroin sold by the DTO. On March 29, 2018, glassines of heroin bearing the "Ras Baraka" stamp were found at the scene of a fatal overdose death in a building across the street from the building where the DTO operated. (PSR ¶ 12). Despite filling in for the pitchers when needed, the defendant's main role within the DTO was oversight of the DTO's drug replenishment process. (PSR ¶¶ 14, 18). When the drug building ran out of product to sell, it was the defendant's responsibility to replenish those supplies by obtaining fresh bundles of heroin from the DTO's stash facility located nearby. In his role as a middle manager, the defendant was also aware of the overdoses that occurred in DTO territory as a result of its sales of fentanyl laced heroin. (PSR ¶ 18).

### B. The Presentence Report

On August 29, 2019, the Probation Department issued the PSR and determined that the defendant's applicable base offense level, under Chapter Three of the Sentencing Guidelines, is 36. (PSR ¶ 28). The PSR also subtracted three levels, under U.S.S.G. § 3E1.1(a), for acceptance of responsibility, resulting in a total offense level of 33. (PSR ¶ 37). Because of the defendant's extensive criminal history, probation concluded that the defendant fell within Criminal History Category III, based on a criminal history score of 5. (PSR ¶¶ 52, 53). As a result, the PSR calculated the applicable Guidelines range as 168 to 210 months' imprisonment.

The PSR identified no factors that would warrant a departure from the applicable Guidelines range, (PSR ¶ 115), and correctly observed that the defendant is ineligible for probation because the offense is a Class B felony, citing U.S.S.G. § 5B1.1(b)(1). (PSR ¶ 104).

### C. The Defendant's Submission

The defendant's submission, dated August 29, 2019, argues that he is a long time drug addict who has been using drugs for over thirty years, and that the instant offense was a product of his need to support his long standing heroin addiction. (See Letter from Ken Womble, Esq. to the Honorable Colleen McMahon, dated August 29, 2019 at 3, Dkt. No. 97). The defendant also cites his advanced age and health related issues as a reason for a downward variance pursuant to 18 U.S.C. § 3553(a).

**D. Discussion**

    **1. Applicable Law**

As the Court is well aware, the Sentencing Guidelines still provide strong guidance to sentencing courts following United States v. Booker, 543 U.S. 220 (2005), and United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," Gall v. United States, 128 S. Ct. 586, 594 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. Id. at 596. After that calculation, however, the Court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, the need to adequately deter criminal conduct and promote respect for the law, and the need to provide restitution to victims. Id. at 50 & n.6.

    **2. A Sentence Within the Stipulated Guidelines Range Is Appropriate in this Case**

The Government respectfully submits that a sentence within the applicable Guidelines range of 168 to 210 months is appropriate under the particular circumstances of this case. The Government submits that such a sentence is appropriate in light of the need for the sentence imposed to (i) reflect the seriousness of the offense, promote respect for the law, and provide just punishment (ii) to afford adequate deterrence; and (iii) account for the history and characteristics of the defendant.

To begin with, this was a serious offense, and the defendant's punishment should reflect that fact. The defendant was a member of a prolific and long running drug-trafficking organization that, in less than one and a half years, distributed approximately 85 kilograms of fentanyl laced heroin worth over $12,000,000. (PSR ¶ 17). Without the defendant's participation, and others like him, the DTO would not have functioned as successfully and efficiently as it did. Moreover, heroin is a highly addictive, dangerous, and potentially deadly drug even when not laced with fentanyl. See, e.g., Marco Sanger-Katz, Bleak Estimates in Drug Epidemic: A Record 72,000 Overdoes Deaths in 2017, The N.Y. Times, Aug. 15, 2018 (noting that heroin overdose deaths exceeded 15,000 in 2017); Joel Achenbach, Fentanyl Drug Overdose Deaths Rising Most Sharply Among African Americans, Washington Post, Mar. 21, 2019 (noting that the death rate among African Americans from fentanyl-involved drug overdoses rose 141 percent each year, on average, from 2011 to 2016); Centers for Disease Control and Prevention, https://www.cdc.gov/drugoverdose/data/heroin.html (last visited Sept. 5, 2019) (noting that heroin related overdose deaths increased five-fold from 2010 to 2017). As such, the defendant knowingly engaged in an activity that poses significant harm to society at large and his criminal conduct is deserving of a significant sentence.

Further, as the PSR describes, the defendant has a lengthy criminal history which includes thirteen prior arrests with twelve convictions. Five of those convictions involved drugs and the defendant received sentences of up to nine years' imprisonment. Clearly, none of these prison

sentences deterred him from continuing to participate in the drug trade. Prior to the instant offense the defendant was arrested as recently as July 2018 – a mere three months before his arrest in this case – for possessing heroin in close proximity to the building where the DTO operated. Thus, a lengthy sentence of imprisonment is the only way to deter this defendant from reoffending. It is also worth noting that in at least four of his previous arrests, the defendant provided the authorities with a fictitious name in an attempt to obscure his true identity.

As the PSR noted, the defendant's conduct has presented an extreme danger to the community through his participation in the distribution of such a highly addictive and dangerous drug. (PSR p. 27). See United States v. Leon, 766 F.2d 77, 81 (2d Cir. 1985) ("[I]t is clear that the harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger.'"). Thus, the defendant's extensive criminal history and repeated drug dealing warrants a sentence within the applicable Guidelines of 168 to 210 months.

## **CONCLUSION**

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Stipulated Guidelines Range of 168 to 210 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____
Dominic A. Gentile/Aline Flodr
Assistant United States Attorneys
(212) 637-2567/1110

cc: Ken Womble, Esq. (Via Email)