**MICHAEL H. SPORN**

ATTORNEY AT LAW
299 BROADWAY
NEW YORK, NEW YORK 10007

TELEPHONE
(212) 791-1200

mhsporn@gmail.com

FACSIMILE
(212) 791-3047

September 17, 2020

Hon. Colleen McMahon
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

                Re: United States v. Juan Gil Cabral
                    Ind. No. 18 Cr 802 (CM)

Dear Judge McMahon:

      This letter is respectfully submitted in connection with the sentencing proceeding currently scheduled for September 22, 2020. Mr. Cabral pled guilty on March 12, 2019 to the lesser-included offense in Count 1 charging a conspiracy to distribute in violation of 21 U.S.C. §841(b)(1)(c). There is no mandatory minimum under the statute. Mr. Cabral has admitted and accepted responsibility for participating in a conspiracy to distribute drugs. His plea was entered pursuant to an agreement that, among other things, calculated his guideline range to be 151-188 months. The Pre-Sentence Report (PSR) calculated the guideline range to be 168-210 months. The difference is based on the inclusion of a prior conviction that put Mr. Cabral in Criminal History Category (CHC) III.[1]

      As your Honor undoubtedly is aware, the PSR recommendation is 54 months. We fully embrace the spirit and reasoning of that recommendation, and ask the Court go a bit further than the recommended variance. We respectfully suggest that a sentence of 36 months is sufficient but not more than necessary to vindicate the public policy purposes of sentencing enunciated in 18 U.S.C. § 3552(a)(2). There are compelling reasons why a substantial variance is appropriate. They include Mr. Cabral's "history and characteristics," his relative role in the "nature of the offense," the "need to avoid unwarranted sentencing disparities" in the sentencing of co-defendants, the likely collateral consequences of this conviction and the onerous, if not dangerous, conditions of confinement to which inmates have been subjected in this COVID 19 era.

---

[1]    See PSR at ¶ 136.

Hon. Colleen McMahon
September 17, 2020
Page - 2 -

In Mr. Cabral's case, many, if not all, the relevant statutory sentencing factors blend into one another. His "history and characteristics" present a familiar immigrant story. He was born in the Dominican Republic in 1989. He will be 31 this October. His parents separated when he was young. His mother came to the United States without her children[2] when they still were young to find work and pave the way for a better life for them. Juan basically was raised by his maternal grandmother in the Dominican Republic after his mother came to the U.S. until she was able to send for him and his brother.

They finally were able to come here in April of 2006 with their uncle. Juan was 16 years' old. He worked at a variety of menial jobs, but as an unskilled and uneducated laborer there was no meaningful career path open to him. Instead, the meaningful story of Juan's life can be told through the grip of substance abuse. It has followed him virtually his entire adult life. His drug use crested from 2016 until his arrest in November of 2018.[3] In those years, he was using cocaine and heroin every day. For over a year up until his arrest, he injected heroin intravenously.[4] No doubt some of that heroin was laced with fentanyl.

His voracious addiction accounts for his role in the "nature of the offense." He was primarily employed as a pitcher. Since he used the very product he sold, if some of that product had traces of fentanyl, he was using that too. He did what he did to get heroin for his own use and for no other reason. This is neither flattering, nor an excuse. But his role, and the reason behind it, affords an important perspective on his relative culpability for sentencing purposes. It is important to recognize what he was not. He was not an owner. He had no ownership interest in what was sold, or in the profits made from sales. He had no managerial responsibilities. He was not a supervisor, manager, organized or leader. He had no stake in the venture. He had no voice in negotiating prices, amount or details of transactions at any retail or wholesale level. Indeed, he was criticized by mid-level managers for his unreliability.[5]

Unfortunately his story is not an unfamiliar one in our courts, or even within the confines of this case. He was one of the legions of customer-users who become seller-users. They provide a willing, cheap labor market to traffickers who exploit addictive behavior in others for their own purposes and profit. This recurring pattern colors consideration of both the "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct,"[6] and the requirement imposed on the courts to consider the applicable guidelines range.

Several co-defendants already have been sentenced in this case. Without presuming to know your Honor's thinking behind the sentences already imposed, it appears apparent that the

---

[2] Juan has a younger brother, Cesar, who also was a defendant in this case.
[3] See PSR at ¶'s 120-121.
[4] Id.
[5] See PSR at ¶ 47.
[6] See 18 U.S.C. §3553(a)(6).

Hon. Colleen McMahon
September 17, 2020
Page - 3 -

Court has given due consideration to the very factors raised in this submission. The defendant's brother, Cesar, was sentenced to 24 months' imprisonment. Cesar did *not* participate in the conspiracy as long as his brother. Anthony Belliard was sentenced to 48 months' imprisonment. He acted as a doorman, lookout and occasional pitcher.[7] Another defendant, Ricky Rosa was sentenced to 60 months' imprisonment. He was a middle manager who had some supervisory responsibilities over other players including Juan Gil Cabral.[8] Jacinto Garcia was sentenced to 72 months' imprisonment. He was a middle manager responsible for supervising between 5 and 7 people.[9] Victor Hidalgo was sentenced to 120 months' imprisonment. He was reputed to be second in command and the general manager.[10]

From these sentences, it appears obvious that the Court has carefully calibrated relative roles and corresponding culpability among co-conspirators in order to achieve sentences that are in proportion to those roles. Juan Gil Cabral was nowhere near the top of this organization. He also was below the middle managers who were sentenced to 60 and 72 months. His role was similar to his brother's, but admittedly longer in duration. His role also appears to be relatively similar to Anthony Belliard's. Our suggestion to the Court to impose a sentence of 36 months' imprisonment is informed by the assessment that Mr. Cabral's role and relative culpability is somewhere between that of his brother who was sentenced to 24 months' and Mr. Belliard who was sentenced to 48 months'.

The sentences already imposed in this case have something else in common. Each represents a substantial variance below the respective applicable guidelines. There is good reason for these variances. To begin, it is almost an aside so many years after the curtain has been drawn on the mandatory regime of the guidelines to note that the guidelines range is not binding on the courts.[11] It is but one of the §3553(a) factors.[12] It is not entitled to any greater weight than the other factors. Although it may be a point of departure,[13] we do not start out with a "thumb on the [Guidelines] scale."[14] It is not entitled to a presumption of reasonableness.[15] And the converse is true as well: a non-guidelines sentence is not regarded as presumptively unreasonable.[16]

---

[7] *See* PSR at ¶'s 59-67.
[8] *See* PSR at ¶'s 44-48.
[9] *See* PSR at ¶'s 40.
[10] *See* PSR at ¶'s 24-26.
[11] *See United States v. Booker*, 543 U.S. 220 (2005).
[12] *Id.*
[13] *See United States v. Fernandez*, 443 F.3d 19, 28 (2nd Cir. 2006).
[14] *See Kimbrough v, United States*, 552 U.S. 87, 113 (2007) (Scalia, J., concurring).
[15] *See Gall v. United States*, 552 U.S. 38, 50 (2007); *Rita v. United States*, 551, U.S. 338 (2007; *Nelson v. United States*, 129 S.Ct. 890, 892 (2009).
[16] *See United States v. Cavera*, 550 F.3d 180, 190 (2008).

Hon. Colleen McMahon
September 17, 2020
Page - 4 -

When the guidelines are pegged to quantity as they are for narcotics offenses, they often can lead to unreasonable results that are odds with the underlying intent of Congress to deal with kingpins or middle managers.[17] In the case of low-level, street sellers who have no ownership interest in trafficking, the guidelines often do not offer meaningful guidance toward a reasonable sentence. That is particularly so when a participant like Juan Gil Cabral is held responsible for the distribution of 85 kilograms of heroin simply because it was foreseeable to him that others (with an ownership interest) moved that much product over time.

What this defendant personally may have sold would be a tiny fraction of what the organization moved. That is precisely why quantity can be a poor proxy for responsibility in sentencing. Guilt is individual, and so is sentencing. To impose a sentence tied to the distribution of 85 kilograms would lead to an excessive if not absurd result. To borrow Judge Rakoff's observation, albeit in the fraud context, we must be careful to avoid "the utter travesty of justice that sometimes results from the guidelines' fetish with arithmetic, as well as the harm that guidelines calculations can visit on human beings if not cabined by common sense."[18]

We ask your Honor to continue to apply the same reasoning in sentencing Mr. Cabral that is reflected in the sentences already imposed in this case with respect to the guidelines. Notably, the Government graciously has acknowledged that Mr. Cabral "did not stand to gain financially as much as the leaders of the DTO and did not have managerial responsibilities over others in the DTO."[19] This fact was undoubtedly pivotal, combined with the further acknowledgement that Mr. Cabral "has had a life-long battle with drug addiction"[20] in the Government's recommendation of a sentence below the guidelines.

Above all, courts ultimately have come to recognize that, despite the guidelines era efforts to achieve consistency, sentencing is, as it must be, an "individualized assessment," *United States v. Jones*, 531 F.3d 163, 170 (2d Cir. 2008) (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)); see also *Koon v. United States*, 518 U.S. 81, 98 (1996) ( "[E]very convicted person [must be considered] as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."); *United States v. Cavera*, 550 F.3d 180, 197 (2d Cir. 2008).

There are other compelling §3553 factors weighing in favor of a variance. Mr. Cabral has been living in the United States for over 14 years. He is a lawful resident alien. Almost, but not all, of his extended family is here. Only his family on his father's side still is in the Dominican Republic. It is a virtual certainty that the United States will remove him from this country upon the completion of his sentence with the admonition not to return under pain of prosecution. We will punish him. Then we will kick him out. And we will tell him don't come back. He will be

---

[17] See *United States v. Dossie*, 851 F.Supp.2d 478 (E.D.N.Y. 2012).
[18] See *United States v. Adelson*, 441 F.Supp.2d 506 (S.D.N.Y. 2006).
[19] See gov. ltr dated September 15, 2020 at page 2.
[20] *Id.* at page 4.

Hon. Colleen McMahon
September 17, 2020
Page - 5 -

separated from his loved ones; and they from him. This is the collateral consequence of a conviction for narcotics trafficking. The immigration law is arbitrary on this point. Not to mention the current political climate. The prospect of permanent separation from his family is a form of punishment beyond that which the criminal law requires.

Mr. Cabral has been in the MCC since November 8, 2018. He has been an inmate in a prison during a deadly pandemic since mid-March of this year. Even before COVID 19, harsh conditions at pretrial facilities such as lack of ample programming, limited family visits and lack of exposure to sunlight and the outside are well known to the courts.[21] Even before *Booker*, courts have held that "pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departure."[22]

Since the onset of the pandemic, conditions in jails, including the MCC have been significantly worse. The danger of spreading a deadly infection is increased in a prison setting because it is impossible to maintain social distancing protocols. The threat of catching a deadly disease is ever present. To live with that constant threat in and of itself is anxiety-producing. Mr. Cabral will continue to live with that threat, and the attendant anxiety that comes with it, for the duration of what time remains to be served after sentencing. Increased lockdowns inside inmate's cells for days and weeks with further restrictions of freedom of movement even within the facility have been a commonplace institutional response. As the Chief Judge of our District, I know your Honor is familiar with the affidavits of experts, among other submissions, outlining the adverse impact of the coronavirus in the MCC and what the institutional response has been. They need not be repeated here. The sum of these conditions wears on the mental and physical health of people who are locked up.

The public policy purposes in the sentencing statute, at §3553(a)(2), to impose a punishment that is "sufficient but not greater than necessary" would be satisfied by a sentence of 36 months. It would be a reasonable,[23] yet still significant, sentence. It would reflect the seriousness of the offense. It would be a just punishment in proportion to Mr. Cabral's role in the offense, and in proportion to his history and characteristics, both mitigating and aggravating.

The government suggests that a substantial sentence is necessary to deter Mr. Cabral and to deter others. It must be acknowledged that this is a serious offense, and that the widespread distribution of drugs like heroin, and fentanyl in particular is dangerous. However, the solution is elusive and has been as vexing as the problem itself. We have had a "war on drugs" for close to half a century. The prison industrial complex has flourished. But putting people in jail for

---

[21] *See, e.g. Bell v. Wolfish*, 441 U.S. 520 (1979); *United States v. Gallo*, 653 F.Supp.320, 336 (E.D.N.Y. 1986).
[22] *See United States v. Carty*, 264 F.3d 191, 196 (2d Cir. 2001); *United States v. Farouil*, 124 F.3f 838, 847 (7th Cir. 1997)(harsh conditions of confinement are valid grounds for departure)..
[23] *See United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005) (rule of reasonableness guides sentencing practices).

Hon. Colleen McMahon
September 17, 2020
Page - 6 -

lengthy sentences hasn't seemed to make any difference at all. As a former police chief, and current mayor of San Francisco, noted, "(L)aw enforcement has been on an incarceration binge for 30 years, and it hasn't worked." For non-violent offenders with substance abuse problems "incarceration doesn't fix the problem."[24]

It is all too common and too easy to find people like Mr. Cabral, who are substance abusers themselves to do the work for traffickers.[25] Their willingness, even eagerness, to have a steady connection for themselves, makes them vulnerable, and ideal candidates for the job description. In all humility, I would humbly suggest that we reimagine our approach to what has been such a vexing and serious problem for so long by investing in the root economic and social causes of the despair, desperation and desolation that is driving the markets for drugs in our impoverished communities. Deterrence sounds good in theory, but history has proven it ineffective in combating drugs and drug abuse.

Another objective of sentencing is to "promote respect for the law."[26] But unduly harsh sentences breed disrespect for the law. "A sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall v. United States*, 552 U.S. 38, 55 (2007). *See also United States v. Deegan*, 605 F.3d 625, 655 (Bright, J., dissenting) (harsh federal punishment compared to lenient state sentencing for the same criminal activity "promotes disrespect for the law and the judicial system."); *United States v. Stern*, 590 F. Supp.2d 945, 957 (N.D. Ohio 2008) ("Respect for the law is promoted by punishments that are fair, however, not those that simply punish for punishment's sake."); *United States v. Ontiveros*, 07 Crim. 233, 2008 WL 2937539, at *3 (E.D. Wis. July 24, 2008) ("[A] sentence that is disproportionately long in relation to the offense is unjust and likewise fails to promote respect [for the law].").

Mr. Cabral has been in custody since November 8, 2018 – a period of over 24 months as of the anticipated November 22 sentencing date. He has squandered whatever opportunities this country may have presented to him. He cannot erase the past or his mistakes in it. He will have to marshal the inner strength to find himself and to find a new purpose in his life as he goes forward. And he will have to build that life, not here, but in his country of origin without the nurturing embrace of his family. The road ahead for him will be daunting and difficult. He knows there must be consequences for violating the law. He asks only for a reasonable

---

[24] *See* New York Times, "California Voters to Decide on Sending Fewer Criminals to Prison" at page A14, October 6, 2014.

[25] Unlike repeat violent offenders, whose incapacitation may protect the public from additional crimes, low-level drug sellers are readily replaced. *See* U.S. Sentencing Comm'n, Fifteen Years of Guidelines Sentencing, An Assessment of How Well The Criminal Justice System is achieving the Goals of Sentencing Reform 134 (2004).

[26] *See* 18 U.S.C. §3553(a)(2)(A).

punishment. We respectfully ask your Honor to take all these factors into account in fashioning a sentence that reflects compassion, fairness and justice.

Respectfully submitted,

Michael H. Sporn

MHS/ss
Cc: Aline R. Flodr, Esq.
    Christopher Paragano, U.S.P.O.